SCHAUER, J.
 

 On September 12, 1935, plaintiff, who was then the owner of, and using in his business as a radio dealer and for pleasure, a certain 1934 Ford sedan automobile, negotiated with defendant Casualty Company, and said defendant wrote, a contract of insurance indemnifying plaintiff against various perils including liability for personal injury arising out of the use of the described automobile or a replacement thereof. Plaintiff owned and operated other automobiles with respect to which he was not insured by said defendant and he had one other policy written by such defendant, but the same is not connected with this litigation
 
 *Supp. 764
 
 which is founded solely upon an alleged breach of the indemnity contract first above mentioned and on which contract the said defendant Casualty Company, hereinafter sometimes referred to merely as defendant or appellant, is sole obligor. On December 4, 1935, plaintiff while driving a 1935 (sold as new January 6, 1936) Ford sedan was involved in an accident causing personal injury to a minor child resulting in litigation and an eventual cash settlement payment by plaintiff. Defendant upon demand having refused to provide for representation or defense of plaintiff in the personal injury action brought by the minor and having not reimbursed plaintiff for the expenses sustained or liability discharged by him, this action was brought to recover damages for such defendant’s alleged breach of contract in the premises, and from the judgment therein for plaintiff upon the verdict, as reduced by the court, the said defendant, Fidelity and Casualty Company of New York, appeals.
 

 For the future guidance of counsel, their attention is directed to the fact that there is nothing in the rules of this court to prevent them from 1 ‘ submitting a detailed analysis of the automatic coverage clause of the policy, or any discussion of the authorities” as declared in appellant’s opening memorandum, at page 8.
 

 The rule involved (sec. 3, rule 5 of Judicial Council Rules governing proceedings in the appellate department, superior court) provides “The points and authorities shall state concisely and separately the propositions of both law and fact relied on by the parties, with references by page and line, if possible, to the parts of the record supporting such propositions of fact and citation of the authorities for such propositions of law, but shall not contain quotations or extracts from the record or from legal authorities. No briefs shall be filed except by permission of the Court.” While such rule directs that points and authorities shall not contain ‘ ‘ quotations or extracts from the record or from legal authorities”, it manifestly does not, in letter or spirit, prohibit an adequate statement and analysis of the points to be presented with the authorities supporting the same. Counsels’ misapprehension of the rule however has not perceptibly impeded an adequate presentation of their points.
 

 Appellant urges first that the evidence is as a matter of law insufficient to support any judgment other than for defendant in that it uncontradictedly appears that at the time
 
 *Supp. 765
 
 of the accident out of which the liability arose plaintiff was driving an automobile (the 1935 sedan) which had not yet been registered, or reported to the motor vehicle department for registration, in his name, and that the 1934 sedan described in the policy remained registered as the property of plaintiff. Appellant cites various decisions, such as
 
 Schmidt
 
 v.
 
 C. I. T. Corp.,
 
 (1936) 14 Cal. App. (2d) 92 [57 Pac. (2d) 1016], holding in effect that the liability of the registered owner of an automobile for negligence in its permitted use continues when it is placed in the hands of a putative purchaser until the formalities of transfer exacted of a transferor by the Motor Vehicle Statute have been performed. Appellant argues that its responsibility as insurer in relation to the 1934 automobile was coextensive (within policy limits) with the liability of plaintiff as owner thereof and that the 1935 model did not “replace” the described 1934 car unless and until the registered title of the one had been transferred from, and that of the other to, the plaintiff. Such contentions cannot be sustained.
 

 By the terms of the policy, liability of the insured is not the test for responsibility of the insurer. By the contract plaintiff was insured against the peril involved here if it was alleged to have occurred “by reason of the use, ownership, or maintenance of any automobile described in the declarations” and it was further provided that “Third—A. Such insurance as is afforded by this Policy to each and every automobile covered thereunder and owned by the Named Insured shall also apply during the policy period to any other automobile, ownership of which is acquired by the Named Insured,
 
 ... as of the date of delivery to him . . .
 

 “
 
 (2) If the Company does not cover all automobiles owned by the Named Insured
 
 at the date of such delivery,
 
 the insurance shall be applicable only to such other automobile if it replaces an automobile described-in this Policy . . .
 

 “ (3) The insurance afforded by this Policy shall automatically terminate upon the replaced automobile
 
 at the time of such delivery.”
 
 (Italics added.) Still further condensing and interpolating the foregoing language, but not altering its meaning in this case, we find that the material agreement is that “Such insurance as is afforded by this Policy to each . . . automobile . . .
 
 owned
 
 by the Named Insured shall also apply ... to any
 
 other
 
 automobile, ownership of which is [sometime] acquired by the Named Insured, . . .
 
 *Supp. 766
 
 as of the date [not of acquiring ownership but] of
 
 delivery
 
 to him” and that “If the Company does not cover all automobiles owned by the Named Insured
 
 at the date
 
 [not of acquiring ownership but]
 
 of such delivery,
 
 the insurance shall be applicable only to such other automobile if it replaces an automobile described . . . and . . . shall automatically terminate upon the replaced automobile [not as of date dependent upon its transfer but] at the time of such delivery.”
 

 There is nothing in the policy to suggest or justify giving to the word “delivery” as used therein any meaning other than its ordinary one, which in the context quoted, would signify a handing over of physical possession and control of the automobile. The fact that the Motor Vehicle Code provides that (sec. 186) “No transfer of the title or any interest in or to a vehicle registered hereunder shall pass nor shall delivery of any said vehicle be deemed to have been made and any attempted transfer shall not be effective for any purpose until transfer of registration is made and the department has issued a new certificate of ownership and registration card” except as therein provided, does not prevent the owner or prospective owner of an automobile from validly contracting for insurance against perils of use dependent upon possession irrespective of the status of registered ownership.
 
 (Golden Gate Motor Transport Co.
 
 v.
 
 Great American Indemnity Co.,
 
 (1936) 6 Cal. (2d) 439, 445 [58 Pac. (2d) 374].) Other sections of the Motor Vehicle Code (for examples see secs. 177, 178, 179) mention delivery or transfer of possession of motor vehicles in a
 
 de facto
 
 sense and it is obviously in that sense that the reference is made in the policy here involved. We are satisfied that the evidence is legally sufficient to support the implied finding that prior to the accident described in the complaint the 1935 sedan had been “delivered” to plaintiff and that it had “replaced”
 
 in his use,
 
 as contemplated by the insurance contract involved herein, the 1934 automobile described therein. The evidence also establishes that plaintiff did acquire the legal status of registered owner of such 1935 model not later than January 10, 1936; having acquired ownership of the car the insurance protection thereon, by the terms of the policy above quoted, attached as of the date of delivery of possession whether that date was prior or subsequent to registration of title,
 

 
 *Supp. 767
 
 The foregoing discussion disposes of all points predicated upon appellant’s interpretation of the policy as being controlled by provisions of the Motor Vehicle Code but leaves entirely unanswered its assignment of prejudicial error in the failure of the court to give its requested instruction No._ 8a, reading as follows: “If it was a fact that the automobile which plaintiff was driving at the time of the accident on December 4, 1935, belonged to H. 0. Melone or the II. 0. Melone Company and was being driven by plaintiff at the time of the accident simply to try the same out with an idea of its possible purchase, then your verdict shall be for defendant.” Such quoted proposed instruction correctly advised the jury as to their duty upon the hypothesized facts and was the only proposed instruction which directly stated their duty upon such specific assumption. The evidence in the record before us would well have supported a finding for defendant upon the very point covered by the refused instruction, which point was not at all adequately covered by any instruction given. In view of the conflict in the evidence upon the precise point postulated we are unable to infer that the same verdict would have been returned had such instruction been given. The defendant was entitled to the requested instruction, or one clearly embodying the substance of the rule stated therein, and failure to give either deprived it of a substantial right.
 
 (Berkovits
 
 v.
 
 American River Gravel Co.,
 
 (1923) 191 Cal. 195, 199 [215 Pac. 675].) “In a personal injury case [the rule is the same here] the plaintiff is entitled to a jury trial as a matter of right under the Constitution and if the jury is misdirected we think this takes away a substantial right, and unless the erroneous instruction was cured by other instructions, or the verdict rendered was the only verdict which the evidence would support, it would of course be prejudicial.”
 
 (Bieser
 
 v.
 
 Davies,
 
 (1932) 119 Cal. App. 659, 664 [7 Pac. (2d) 388].) Under the circumstances appearing in the case at bar the refusal to give the instruction requested was as much a deprival of right to appellant as was the giving of the erroneous instruction a denial of right to the appellant in the case last herein-above cited. Under such circumstances defendant is entitled to a new trial.
 

 Other errors complained of which are less consequential in effect but which should not be repeated upon a
 
 *Supp. 768
 
 new trial include the giving of plaintiff’s instructions No. 8, which is ambiguous and unintelligible, and No. 9, which is incomplete and suggestive of a greater burden upon defendant than may be properly charged to it, ignoring the duty to find for defendant in the event that the evidence seemed equally balanced. Whether the judgment upon the verdict as reduced by the court was still excessive as including an allowance for attorney’s fees not shown to be reasonable in amount or to have been actually paid (see 8 Cal. Jur. 747;
 
 Willson
 
 v.
 
 McEvoy,
 
 (1864) 25 Cal. 169;
 
 Prader
 
 v.
 
 Grimm,
 
 (1865) 28 Cal. 11;
 
 Elder
 
 v.
 
 Kutner,
 
 (1893) 97 Cal. 490, 495 [32 Pac. 563] ;
 
 Nelson
 
 v.
 
 Kellogg,
 
 (1912) 162 Cal. 621, 623 [123 Pac. 1115, Ann. Cas. 1913D, 759] ;
 
 Cook
 
 v.
 
 Terry,
 
 (1912) 19 Cal. App. 765, 768 [127 Pac. 816];
 
 Soule
 
 v.
 
 United States F. & G. Co.,
 
 (1927) 82 Cal. App. 572, 574 [255 Pac.. 886]), we need not here, and do not, decide as the same status of evidence and alleged excessive verdict thereon in respect to such item is not likely to appear upon another trial.
 

 The judgment is reversed and the cause is remanded to the Municipal Court of the City of Long Beach for a new trial, appellant to recover its costs of appeal.
 

 Shaw, P. J., and Shinn, J., pro
 
 tern.,
 
 concurred.